JENNIFER K. ZELENY (Bar No. 15044)
**HEPWORTH MURRAY & ASSOCIATES**
140 South Main Street
Bountiful, UT 84010
Telephone: (801)872-2222
jennifer@hepworthmurray.com
*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HAROLD MARK TORBETT (A.K.A. MARK TORBETT) and REGINA TORBETT<br><br>        Plaintiff,<br><br>vs.<br><br>THE CITY OF OGDEN, OGDEN CITY POLICE DEPARTMENT, CODY MARSH, Z. MARTIN, T. WILLIAMS<br><br>        Defendant. | **COMPLAINT**<br>**(JURY DEMANDED)**<br><br><br>Civil No. 1:16-cv-00044-BSJ<br>Judge: Bruce S. Jenkins |

        Plaintiffs Harold M. Torbett and Regina L. Torbett, by and through Counsel Jennifer K.

Zeleny, hereby complains against the City of Ogden, a political subdivision of Utah, and Officers

Cody Marsh, Z. Martin, and T. Williams, as follows:

### I.  NATURE OF THE CLAIMS

        1.        This suit is a civil rights action in which Plaintiffs seek relief for the Defendants'

violations of the rights of Harold Torbett, guaranteed by the United States Constitution,

specifically, the Second, the Fourth, the Fifth, and/or the Fourteenth Amendments, which rights are further secured by the Civil Rights Act of 1871, codified as 42 U.S.C. § 1981, § 1983, and § 1988.

2.      This action also seeks relief under the Constitution of the State of Utah, Article I, Sections 1, 7, 9, 14, and 25, to the extent applicable under the facts.

3.      This is further an action at law to redress grievances under the laws, statutes, and Constitution of the State of Utah.

## II.  PARTIES

4.      Plaintiff Harold Torbett is a resident of the State of Alabama who was travelling through the State of Utah at all times relevant hereto, and a citizen of the United States within the meaning of §1981, §1983, and §1988 at all relevant times.

5.      Plaintiff Regina Torbett is a resident of the State of Washington who is presently married to Harold Torbett and has been married to him at all times pertinent hereto.

6.      Defendant Ogden City ("Ogden") is a political subdivision of the State of Utah.

7.      Defendant Ogden City Police Department ("Ogden P.D.") is a political subdivision of the State of Utah.

8.      At all relevant times, Defendants Cody Marsh ("Marsh"), Z. Martin ("Martin"), and T. Williams ("Williams") were police officers with the Ogden P.D.  At all times alleged in this Complaint, Marsh, Martin, and Williams were acting within the course and scope of their employment.  Plaintiffs are additionally suing Marsh, Martin, and Williams in their individual capacities.

## III.  JURISDICTION AND VENUE

2

9.      This action arises under the Second, Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States, and 45 U.S.C. §1981, §1983, and §1988.  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1331 and § 1343.  The Court has supplemental jurisdiction of the Plaintiffs' state law claims under 28 U.S.C. § 1367.

10.     The claims made in this Complaint occurred and arose in Weber County, State of Utah.  Accordingly, venue is proper under 28 U.S.C. §1391.

## IV.  GENERAL ALLEGATIONS

11.     On the afternoon of February 8, 2016, Mr. Torbett was driving through the State of Utah during the course of a cross-country drive.

12.     While driving through Utah, Mr. Torbett, who suffers from diabetes, began to feel ill following a restaurant meal, and began to believe that he was suffering from severe food poisoning.

13.     Mr. Torbett, who is age 60, is approximately six feet tall and weighs 168 pounds.

14.     Mr. Torbett was also carrying an unloaded 22 Caliber, Model PP Walther semi-automatic handgun.

15.     Utah is an open-carry state, and Mr. Torbett had a constitutional right to be in possession of the gun in his vehicle.

16.     Because Mr. Torbett was feeling extremely ill and perceived his physical health as rapidly declining, he entered the Ogden City P.D. to request medical attention.

17.     At approximately 12:47 P.M.[1], Mr. Torbett calmly entered the lobby of the Ogden City P.D. with his disassembled gun, disclosed to the clerk that he was armed and attempted to

---

[1] The video of this incident shows 1:47 P.M., but the police report and the Plaintiff's recollection is that the series of events described in this complaint occurred an hour earlier, and the times have

voluntarily surrender his disassembled weapon[2], and requested assistance in obtaining medical attention.  The clerk refused to take possession of the firearm and instructed Mr. Torbett to sit on the couch.

18.     At approximately 12:53 P.M., after attempting to surrender his disassembled firearm and speaking with the desk clerk and an officer, Mr. Torbett sat down on a couch in the lobby with his disassembled firearm next to him, and waited for medical attention to arrive.  The employees of Ogden Police Department who were in the lobby continued about their business as if Mr. Torbett and his openly displayed disassembled firearm were not there.

19.     At approximately 12:56 P.M., officers approached Mr. Torbett, who remained seated on the couch with his disassembled firearm next to him, and began speaking with him.

20.     At approximately 1:00 P.M., Mr. Torbett, who continued to feel his health declining, became concerned that the officers were not summoning medical attention and were instead behaving in a confrontational and accusatory manner.  He once again stated that he felt ill and needed immediate medical attention.  Officer Williams responded, "Do I look like I take people to the hospital?"  Mr. Torbett replied by requesting the officer to call 911 to summon immediate medical care, and stated that he needed to leave if medical attention was not going to be provided.

21.     At approximately 1:03 P.M., as Mr. Torbett, who was not under arrest and had not been told that he was not free to leave, was trying to leave the lobby of the Ogden P.D. to seek medical care Williams threw Mr. Torbett to the ground, shattering his hip.

_____

been adjusted accordingly.
[2] Pursuant to Utah Code Ann. §53-5C-201, a police station is the appropriate place to voluntarily surrender firearms in situations where continued possession of the firearm causes safety concerns.

22.     Mr. Torbett immediately complained of severe hip pain, and was finally handcuffed and transported to the hospital where he was found to have a blood sugar of approximately 800, and was found to be suffering from diabetic ketoacidosis – a known complication of diabetes that may cause mental confusion and severe stomach pain.

23.     The actions and excessive use of force of the officers collectively, and Williams in particular, were the result of willful and malicious conduct and/or manifested a knowing and reckless indifference toward, and a disregard of the rights of others.

**COUNT I.  –  DEPRIVATION OF RIGHTS UNDER THE COLOR OF LAW**

24.     Plaintiff incorporates by reference paragraphs 1 through 23 herein.

25.     Defendants Marsh, Martin, and Williams (collectively "Officers" hereinafter) at all times relevant hereto, and in performance of the acts set forth herein, acted under color of state law.

26.     At all times relevant hereto, and in performance of the acts set forth herein, the Officers actively and personally caused the violations of constitutional rights alleged herein.

27.     The Officers' conduct alleged herein, including Williams' use of unreasonable or unnecessary physical force, subjected Mr. Torbett to the deprivation of his rights protected under the Fourth Amendment to the U.S. Constitution.

28.     The Officers' conduct alleged herein, including detaining Mr. Torbett, retaliating against Mr. Torbett for disclosing that he possessed a lawful firearm and attempting to lawfully relinquish it prior to seeking medical assistance, and for slamming him to the ground when he attempted to leave Ogden P.D. to seek medical care, violated Mr. Torbett's rights under the Second Amendment to the United States Constitution.

5

29.     If, under these facts, Mr. Torbett is not deemed to have been seized under the Fourth Amendment and not deemed to be in custody, then the Officers' actions deprived him of liberty and bodily integrity, as substantively guaranteed to Mr. Torbett under the Fifth and Fourteenth Amendments.

30.     The unreasonable, excessive, and dangerous force used by the Officers collectively and Williams most particularly, which directly caused Mr. Torbett's injuries as described above, deprived him of a liberty interest without due process of law, in violation of the Fifth and/or Fourteenth Amendments of the U.S. Constitution.

31.     The Officers' actions violated Mr. Torbett's clearly established constitutional rights of which reasonable police officers are or should be aware.

32.     The actions of the Officers were the proximate cause of pain and suffering to Mr. Torbett, the physical injuries sustained by Mr. Torbett, and the other economic injuries and losses sustained by Plaintiffs.

33.     As a result of the Officers' unlawful actions, and to remedy misconduct of significant importance to the public, the Plaintiff has had to retain counsel.

34.     The Officers' actions manifested malicious, reckless, and callous indifference to the rights and bodily integrity of Mr. Torbett.

## COUNT II. – DEPRIVATION OF RIGHTS UNDER THE COLOR OF LAW

35.     Plaintiff incorporates by reference all other paragraphs of this Complaint.

36.     The actions of the Officers were pursuant to, and consistent with, an established policy, practice, or custom of Defendant Ogden.

37.     The actions of the Officers were pursuant to an Ogden policy, practice, or custom

6

that consists of failing to train police officers in the recognition of medical crises and the summoning of appropriate medical care, failing to train police officers in the use of appropriate de-escalation techniques with medically fragile individuals, and condoning the use of physically aggressive and dangerous force against medically fragile citizens.

38.     Defendant Ogden was deliberately indifferent toward the proper training and supervision of its employees and agents.

39.     The actions of Defendant Ogden were the proximate cause of pain and suffering to Mr. Torbett, the physical injuries sustained by Mr. Torbett, and the other economic injuries and losses sustained by Plaintiffs.

40.     As a result of Defendant Ogden's actions, and in order to remedy this important issue of public concern, Plaintiff has had to retain legal counsel.

## COUNT III. – STATE CONSTITUTIONAL CLAIMS

41.     Plaintiff incorporates by reference all other paragraphs of this Complaint.

42.     The actions of Defendants described herein violated Mr. Torbett's rights secured by Article I, Section 1 of the Utah Constitution ("All men have the inherent and inalienable right to enjoy and defend their lives and liberties; to acquire, possess and protect property[.]").

43.     The actions of Defendants described herein violated Mr. Torbett's rights secured by Article I, Section 6 of the Utah Constitution ("The individual right of the people to keep and bear arms for security and defense of self, family, others, property, or the state, as well as for other lawful purposes shall not be infringed[.]"

44.     The actions of Defendants described above violated Mr. Torbett's rights secured by Article I, Section 7 of the Utah Constitution ("No person shall be deprived of life, liberty, or

7

property without due process of law.").

45.     The actions of Defendants described herein violated Plaintiff's rights secured by Article I, Section 14, which states in relevant part, "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated."

46.     The actions of Defendants described herein violated Plaintiff's rights secured by Article I, Section 25, which states in relevant part: "This enumeration of rights shall not be construed to impair or deny others retained by the people."

47.     The Defendants' actions described herein amount to flagrant violations of the Plaintiff's rights under the Utah Constitution.

48.     There is no other adequate state law remedy for these violations.

49.     Injunctive relief cannot redress Plaintiff's injuries.

50.     The actions of the Defendants were the proximate cause of pain and suffering to Mr. Torbett, the physical injuries sustained by Mr. Torbett, and the other economic injuries and losses sustained by Plaintiffs.

51.     As a result of Defendant Ogden's actions, and in order to remedy this important issue of public concern, Plaintiff has had to retain legal counsel.

## COUNT IV. – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

*(Informational at the Present Time)*

52.     Plaintiffs incorporate by reference all other paragraphs of this Complaint.

53.     These allegations are informational at the present time.  Under Utah law, Plaintiffs are required to prove notice of causes of action against a governmental entity, beginning with a

notice of claim, which has occurred or will occur shortly.  The governmental entity thereafter has 60 days in which to respond.  It is anticipated that no response will be made or that this claim will be denied, after which Plaintiffs will seek to add the Fourth and Fifth Claims for Relief as official causes of action, and will do so by the amending process under the Federal Rules of Civil Procedure.  Therefore, both the Fourth and Fifth Claims for Relief are for informational purposes only and do not require an answer at this time, but are provided to assist the Defendants and the Court in knowing what is coming in the future.

54.     Officers' intentional and/or reckless actions as described above constituted outrageous conduct under the circumstances.

55.     Officers' actions offended generally accepted standards of decency and morality.

56.     Any reasonable person would have known that the intentional and/or reckless actions would result in severe emotional distress to Mr. and Mrs. Torbett.

57.     Mr. and Mrs. Torbett have, in fact, suffered such emotional distress.

## COUNT V – LOSS OF CONSORTIUM

*(Informational at the Present Time)*

58.     Plaintiffs incorporate by reference all other paragraphs of this Complaint.

59.     At the time of the events complaint of in the Plaintiffs' Complaint, the Plaintiffs were married and continue to be married.

60.     As a result of the wrongful acts of the Defendants, and each of them, the Plaintiffs were caused to suffer, and will continue to suffer in the future, loss of consortium, loss of society, affection, assistance, and conjugal fellowship, all to the detriment of their marital relationship.

61.     All aforesaid injuries and damages were caused solely and proximately by the

9

wrongful acts of the Defendants.

## COMPLAINCE WITH GOVERNMENTAL IMMUNITY ACT OF UTAH

62.    Plaintiffs' constitutional claims are not subject to the provisions of the Utah Governmental Immunity Act.

63.    With respect to the Fourth and Fifth Claims for Relief, Plaintiffs have complied with applicable provisions of the U.C.A. §63G-7-101.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment against Defendants as follows:

1.     A declaration and judgment that the actions of the Officers and Ogden's customs regarding the use of lethal force are and were unconstitutional;

2.    Economic and noneconomic damages as provided under applicable law and deemed appropriate by a jury;

3.    Attorney fees and litigation expenses pursuant to 42 U.S.C. §1988, Utah law, and equity, to the full extent provided under applicable law;

4.    Punitive damages against the Officers, as provided under applicable law and to the extend deemed appropriate by a jury;

5.    Costs as provided under applicable law;

6.    Pre-judgment and post-judgment interest as provided under applicable law;

7.    All other equitable relief deemed just and appropriate by the Court, including an order (a) requiring Ogden to equip its law enforcement officers with body cameras while engaging with citizens, (b) requiring Ogden's law enforcement to be trained on the appropriate interactions with individuals experiencing medical crises and appropriate de-escalation techniques, (c) to

provide training regarding the use of physical force, and (d) to implement other training,

supervision, and policies required to meet federal and state constitutional requirements.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Dated this 11th day of April 2016.

/s/Jennifer K. Zeleny____
Jennifer K. Zeleny, Esq.
Attorney for Plaintiff