FILED
2018 OCT 11 PM 3:26
CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| HAROLD MARK TORBETT (A.K.A. MARK TORTBETT) and REGINA TORTBETT, <br><br> Plaintiffs, <br><br> v. <br><br> THE CITY OF OGDEN, OGDEN CITY POLICE DEPARTMENT, CODY MARSH, Z. MARTIN, T. WILLIAMS, <br><br> Defendants. | **MEMORANDUM DECISION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** <br><br> Case No. 1:16-cv-00044-BSJ <br><br> Judge Bruce S. Jenkins |

## BACKGROUND

Plaintiff and his wife filed this action against Defendants under 42 U.S.C. § 1983 on April 11, 2016. On March 19, 2018, Defendants filed a motion for summary judgment, raising qualified immunity, and a motion in limine. In turn, Plaintiff filed oppositions on April 19, 2018, and Defendants replied on May 8, 2018. This matter came before the court for hearing on May 18, 2018. At the hearing, the court granted Defendants' summary judgment motion as to the City of Ogden, the Ogden City Police Department, and Officer Zachary Martin. The court took under advisement the motion as to Officers Travis Williams and Cody Marsh. Having considered the parties' briefs, the evidence presented, the arguments of counsel, and the relevant law, the court now determines Defendants' summary judgment motion should be granted as to Officers Williams and Marsh. Thus, the motion in limine is moot.

## SUMMARY JUDGMENT

Summary judgment is appropriate if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Since the court

views the facts in the light most favorable to the nonmoving party, "[i]n qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, the Supreme Court requires the nonmoving party to show a genuine dispute to successfully survive a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986) ("*[S]ome* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original). Likewise, the Tenth Circuit recently admonished: Although "courts ordinarily accept the plaintiff's version of the facts" in a qualified immunity analysis at summary judgment, the plaintiff's version "must find support in the record." *A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016). Ultimately, if the nonmoving party fails to properly address the moving party's assertion of fact as required by Rule 56(c), the court may "consider the fact undisputed for the purposes of the motion." Fed.R.Civ.P. 56(e)(2).

## UNDISPUTED FACTS

The court considers the following facts undisputed. All facts and reasonable inferences have been construed in the light most favorable to Plaintiff, the nonmoving party, to the extent that the facts are supported in the record.

### A. Plaintiff Enters the Ogden City Police Station

In the afternoon on February 8, 2016, Plaintiff was driving through Utah on a cross-country road trip when he began feeling ill—weak, dizzy, and unfit to drive on.[1] He did not know the cause but thought it could be food poisoning.[2] After parking his car, he entered the

---

[1] Dep. of Harold Mark Torbett 62:21–25, 63:1–12.
[2] *Id.* at 77:12–16.

Ogden City Police Department to seek medical help.[3] He carried with him in his laptop bag a Walther PP .22 caliber handgun, which he claims was unloaded as he entered the station.[4] Despite carrying a concealed weapon on his road trip, Plaintiff did not have a concealed carry permit in Utah nor in any other state.[5] He felt afraid, his heart racing as he entered the station, but he brought the gun "on purpose" to surrender it to law enforcement while he sought medical help.[6] When told by office staff to wait in the lobby, he did so, sitting on a couch with the gun and its ejected loaded magazine at his side.[7]

### B. Officers Are Called to the Station

Soon after, police dispatch issued a radio call: "Man with a gun. 2186 Lincoln [the police station's address]. . . . [M]ale dressed in all blue waiting downstairs. Had a small gun with him. Took the magazine out and took the bullets out. . . ."[8] Officers Travis Williams, Cody Marsh, and Zachary Martin responded.[9] When asked about the call in their depositions, each officer only remembered hearing there was "man with a gun" at the police station and nothing about the ejected magazine or bullets.[10] Officers Williams and Martin, who were in a back office at the police station, arrived first while Officer Marsh, who was patrolling nearby, arrived soon after.[11]

---

[3] *Id.* at 66:19–25, 67:1–3.
[4] *Id.* at 53:17–19, 54:2–4,15–25.
[5] *Id.* at 67:4–8, 72:12–16.
[6] *Id.* at 59:1–2, 63:6–12, 67:20–23. Plaintiff argues to justify his actions by stretching the application of Utah's Firearm Safe Harbor law. The law allows a cohabitant of a residence with a firearm to surrender the firearm to law enforcement if *another* cohabitant is an immediate threat to himself or others. Utah Code Ann. §53-5c-201. By its plain language, the law does not apply to self-surrender situations; thus, it does not apply in this case and will not be addressed further in this opinion.
[7] Torbett Dep. 69:13–22, 77:8–25, 78:1–4; Dep. of Zackary Martin 28:8–9; Dep. of Travis Williams 34:1–4.
[8] Defs.' Reply Br. Ex. A: 911 and Dispatch Calls.
[9] Dep. of Cody Marsh 28:18–21; Martin Dep. 25:2–13; Williams Dep. 30:5–9.
[10] Marsh Dep. 30:1–9; Martin Dep. 26:16–21; Williams Dep. 30:14–19.
[11] Defs.' Reply Br. 7, ECF No. 58; *see* Marsh Dep. 28:18–24; Martin Dep. 27:25, 28:4; Williams Dep. 31:20–25.

3

## C. Officers Attempt to Investigate

Officer Williams approached Plaintiff seated on the couch and quickly recovered the gun lying next to him.[12] The officers then asked Plaintiff questions about who he was, where he had come from, and why he was there.[13] Plaintiff indicated he had been shot at and was "rambling" about "somebody following him while looking out the window like he's being followed."[14] He indicated he might have food poisoning, but the officers' understanding was that he was simply "poisoned."[15] Plaintiff testified that, during his time in the station, he continued to feel ill, like he was "fading in and out of consciousness."[16] He further testified the officers must have thought he was on drugs.[17]

Plaintiff requested medical care, and approximately three-and-a-half minutes into the seven-minute interaction, medical services located in the same building were called.[18]

The officers also asked several questions about Plaintiff's gun.[19] Sometime during the interaction, when Officer Martin told Plaintiff that he needed a permit to carry a concealed firearm, Plaintiff responded, "You are a fucking dumbass."[20] Although Plaintiff contends he was "courteous" and "spoke in low tones," he does not deny using the choice epithet.[21]

---

[12] Williams Dep. 33:13–20.
[13] Torbett Dep. 78:25, 79:1–5; Marsh Dep. 33:14–23; Martin Dep. 29:9–22; Williams Dep. 34:5–6.
[14] Defs.' Reply Br. 7, ECF No. 58; *see* Marsh Dep. 32:14–23; Martin Dep. 29:17–18. Plaintiff argues he did not make these statements yet does not cite to counterproof in the record. Pl.'s Opp'n Br. 10, ECF No. 52. In fact, he does not so much as provide an affidavit with a denial. Since Plaintiff's version of the facts are unsupported in the record as required by Rule 56(c) and the Tenth Circuit, the court considers the fact "undisputed for the purposes of the motion." Fed.R.Civ.P. 56(e)(2); *see A.M. v. Holmes*, 830 F.3d at 1136.
[15] Defs.' Reply Br. 7, ECF No. 58; *see* Torbett Dep. 84:7–12; Marsh Dep. 32:14–23; Martin Dep. 34:23–25, 35:1–4; Williams Dep. 33:7–9.
[16] Torbett Dep. 82:21–24.
[17] *Id.* at 98:4–5.
[18] Defs.' Reply Br. 7, ECF No. 58; *see* Williams Dep. 31:3–12, 34:1–4.
[19] Torbett Dep. 83:5–12.
[20] Martin Dep. 28:18–22, 29:1–5.
[21] Torbett Dep. 155:4–5; Pl.'s Opp'n Br. 11, ECF No. 52.

### D. Plaintiff Attempts to Leave the Station

During the interaction, Plaintiff attempted to leave the station several times.[22] First, he attempted to leave by standing up from the couch.[23] Because the officers were still investigating and aid was on its way, he was told "not [to stand] just yet."[24] Plaintiff then threatened to knock out Officer Williams.[25] Plaintiff again attempted to leave.[26] As he stood up and started walking toward the exit, the officers were concerned for Plaintiff's and the public's safety: that Plaintiff would leave before medical assistance arrived; that Plaintiff, who entered the police station with a gun, might have another gun in his car nearby; and, since Plaintiff had indicated he was shot at and being followed, that the shooter was at large and looking for him.[27] In short, he was a danger to himself and others.[28]

### E. Plaintiff Resists Attempts to Detain Him

The accounts of what exactly happened next differ,[29] but even with the facts viewed in the light most favorable to Plaintiff, it is clear Officer Williams attempted to restrain Plaintiff from leaving and that Plaintiff did not comply. In the process, a bottle in Plaintiff's hand splashed water on Officer Martin's face.[30] Officer Marsh then grabbed Plaintiff's arms or hands,

---

[22] Defs.' Reply Br. 8, ECF No. 58.
[23] Torbett Dep. 84:19–25, 85:1, 5–10.
[24] Torbett Dep. 86:7–11; Marsh Dep. 35:10–15.
[25] Williams Dep. 34:5–9. Plaintiff argues he never made this threat, but he does not cite to nor provide counterproof in the record. Pl.'s Opp'n Br. 7, ECF No. 52. Since Plaintiff's version of the fact is unsupported in the record, the court considers the fact undisputed under Rule 56(e)(2).
[26] Torbett Dep. 86:18–23.
[27] Defs.' Reply Br. 8, ECF No. 58; *see* Williams Dep. 53:16–25, 54:1–14; Martin Dep. 46:1–15.
[28] Defs.' Reply Br. 8, ECF No. 58; *see* Williams Dep. 53:16–24; Martin Dep. 46:9–12.
[29] Defendants claim Officer Williams put out his arm, which Plaintiff "knocked away." Williams Dep. 35:16–18. Plaintiff claims Officer Williams grabbed Plaintiff's arm, which he "pulled," "turned," and "twisted" away to avoid a painful hold. Torbett Dep. 88:12–14, 89:6–14.
[30] Marsh Dep. 34:16–19; Martin Dep. 29:13–17; Williams Dep. 34:24–25, 35:1–2. Plaintiff attempts to dispute this fact by noting he was "shocked" at the allegation. Pl.'s Opp'n Br. 13, ECF No. 52. However, he does not cite nor produce contrary evidence to dispute whether water in fact splashed on an officer's face. Since the dispute is not genuine under Rule 56(c), the fact is considered undisputed under Rule 56(e)(2). *See Matsushita Elec. Indus. Co.*, 475 U.S. 574, 587 (1986) (noting Rule 56 requires an opponent to articulate "specific facts showing that there is a *genuine issue for trial*.") (emphasis in original).

attempting to place him in handcuffs.[31] At that time, although the officers did not tell Plaintiff that he was under arrest, the officers believed they had probable cause to arrest him for disorderly conduct, resisting arrest, and carrying a concealed firearm.[32] Officer Williams, who by then had Plaintiff in a bear hug hold, decided to take Plaintiff to the ground.[33] Plaintiff landed on his left hip.[34] As soon as he was taken down, medical assistance arrived.[35]

### F. Events After the Incident

After he was rushed to the hospital, Plaintiff was treated for several conditions. He was diagnosed with diabetic ketoacidosis, a serious condition resulting from a lack of insulin.[36] He also received treatment for a "left subtrocanteric femur fracture."[37] Lastly, because Plaintiff presented paranoia and delirium, his treating physicians consulted the hospital's psychiatry service, which concluded that the "paranoia was secondary to delirium from his acute illness, i.e. diabetic ketoacidosis."[38] Before discharge, Plaintiff's mental status returned to baseline.[39]

Plaintiff alleges his injured femur was a result of Officer Williams's takedown maneuver.[40] Since bringing this case, Plaintiff has not designated any retained medical experts, only a use-of-force expert.[41] This expert concedes in his report that (1) "the officers had reasonable suspicion to conduct an investigation" and, in the course of their investigation, (2) "the officers were attempting to de-escalate the situation."[42]

---

[31] Marsh Dep. 35:20–25, 36:1–6.
[32] Defs.' Reply Br. 8, ECF No. 58; see Marsh Dep. 56:10–14.
[33] Williams Dep. 34:21–25, 35:1–15; Marsh Dep. 36:13–17.
[34] Torbett Dep. 93:15–23.
[35] Williams Dep. 35:20–21; Martin Dep. 30: 1–6.
[36] Pl.'s Opp'n Br. Ex. 5: Medical Report, Ex. 6: Discharge Summ, ECF No. 52.
[37] Id.
[38] Pl.'s Opp'n Br., Ex. 6: Disch. Summ., ECF No. 52.
[39] Id.
[40] Pl.'s Am. Compl. 4, ECF No. 21.
[41] Pl.'s Discl. Expert Test. 1–2.
[42] Defs.' Reply Br. 9, ECF No. 58; see Hergert Dep. 20:7–25, 72:1–12.

## **QUALIFIED IMMUNITY**

As grounds for summary judgment, Defendants raise the defense of qualified immunity. The doctrine of qualified immunity is "designed to protect public officials who act in good faith, on the basis of objectively reasonable understandings of the law at the time of their actions." *Pierce v. Gilchrist,* 359 F.3d 1279, 1299 (10th Cir. 2004). The defense protects "all but the plainly incompetent or those who knowingly violate the law." *Gross v. Pirtle*, 245 F.3d 1151, 1155 (10th Cir. 2001). The court carefully considers qualified immunity claims because, if successful, it is an "*immunity from suit*, rather than a mere defense to liability," but the claim is "effectively lost if a case is erroneously permitted to go to trial." *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis in original). Likewise, "the Supreme Court has repeatedly 'stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Albright v. Rodriguez,* 51 F.3d 1531, 1534 (10th Cir. 1995) (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991)); *see Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007).

When qualified immunity is raised, the burden shifts to the plaintiff to show that the defendant (1) violated the plaintiff's constitutional right and (2) that right was clearly established when the violation occurred. *Pearson* v. *Callahan,* 555 U.S. 223, 231 (2009). The court may address the two prongs in either order, *id.* at 236, but "if the plaintiff fails to establish either prong," then "the defendant prevails on the defense." *A.M. v. Holmes*, 830 F.3d at 1134–35.

### A. Violation of a Constitutional Right

Plaintiff alleges that Officers Williams and Marsh used excessive force, in violation of his Fourth Amendment rights. An excessive force claim is analyzed under *Graham v. Connor*'s objective reasonableness standard. 490 U.S. 386, 395 (1989); *see also Cty. of Los Angeles, Calif.*

*v. Mendez*, 137 S. Ct. 1539, 1547 (2017) ("If there is no excessive force claim under *Graham*, there is no excessive force claim at all."). *Graham* requires courts to give "careful attention to the facts and circumstances of each particular case," including the (1) the severity of the plaintiff's crime(s), (2) the level of threat the plaintiff posed to the officers and others, and (3) the plaintiff's efforts to resist or evade arrest. *Id.* at 396. The reasonableness of force is viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* That perspective includes the information possessed by the officers on the scene. *Anderson v. Creighton,* 483 U.S. 635, 641 (1987).

For courts reviewing excessive force claims at the summary judgment stage, if there remain no genuine issues of material fact, the reasonableness of the officer's actions presents "a pure question of law." *Scott,* 550 U.S. at 381 n.8; *accord Mecham,* 500 F.3d at 1203 ("[T]he question of objective reasonableness is not for the jury to decide where the facts are uncontroverted.") (emphasis omitted). As two Defendants remain in this case, Officers Williams and Marsh, a question remains as to whether they used excessive force.

*1. Threat Posed to the Officers and Others*

The court begins its objective reasonableness analysis with "undoubtedly the most important" *Graham* factor, the threat posed to officers and others. *Pauly v. White*, 874 F.3d 1197, 1216 (10th Cir. 2017). Here, as to the officer's safety, the gun did not pose a threat because it was unloaded at all times and recovered at the encounter's outset.[43] Rather, any threat to the officers arose from Plaintiff's strange and aggressive behavior in a place prized as the pinnacle of public

---

[43] Defendants rely on *United States v. Windom*, 863 F.3d 1322 (10th Cir. 2017), as an instructive case on the reasonableness of force when officers are investigating a crime involving a firearm. However, *Windom* is inapplicable. Unlike in *Windom*, where the officers' safety concern arose from a loaded gun still in play, here Plaintiff's gun was unloaded and recovered immediately by Officer Williams. Furthermore, Plaintiff never asked for its return.

8

safety, a police station: Plaintiff appeared paranoid, threatened to knock out Officer Williams, swore at Officer Martin, splashed water on Officer Martin, and physically resisted Officer Williams's attempt to detain him.

Plaintiff posed an even greater threat to others—specifically, himself and the public—if allowed to leave. First, Plaintiff was, as he put it, "fading in and out of consciousness."[44] Aid was on the way. The officers sought to restrain and detain Plaintiff in the lobby so medical services, located in the same building, could treat him as soon as they arrived. Second, if Plaintiff were allowed to leave, the officers would have been unable to complete their investigation into whether Plaintiff carried a concealed weapon into the police station, whether he had another in his car, and whether there was a shooter at large and looking for him.

When faced with safety threats, officers may protect themselves in certain circumstances by "drawing their weapons, placing a suspect in handcuffs, or forcing a suspect to the ground." *Novitsky v. City of Aurora*, 491 F.3d 1244, 1254 (10th Cir. 2007). The court finds this as one such circumstance where an arm hold in preparation for handcuffing and a takedown maneuver were objectively reasonable. Defendants refer to *Gallegos v. City of Colorado Springs*, and the court finds the case on point. 114 F.3d 1024 (10th Cir. 1997). In *Gallegos*, officers were investigating an uncertain situation, a domestic disturbance, and encountered the suspect acting strangely, talking loudly with his hands over his face, and appearing intoxicated. While attempting to investigate, an officer grabbed the suspect's arm as he walked away. The suspect pulled away twice, saying "leave me the fuck alone," and walked on. *Id.* at 1026. With probable cause to arrest the suspect for interfering with an investigation, the officer grabbed the suspect's shoulder. Fists clenched, the suspect spun toward the officers and assumed a wrestler's position.

---

[44] Torbett Dep. 82:23–24.

9

One officer then used an "arm bar maneuver" and the other a "take-down" to effectuate the arrest. *Id.* The Tenth Circuit affirmed that the officers' force was reasonable to secure their safety given the suspect's "strange and aggressive conduct." *Id.* at 1031. So too here, officers were investigating an uncertain situation and Plaintiff exhibited strange and aggressive behavior reasonably justifying an arm hold and takedown to control the escalating threat to themselves and others. *See Graham*, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving . . . .").

Admittedly Plaintiff's behavior could have been less intentional and more innocuous than it appears. The water splash may have been accidental; the shifting during Officer Williams's arm hold may have been to find a more comfortable position. But even if the officers misinterpreted Plaintiff's water splashing and arm shifting to be threats, they reasonably did so, especially when those behaviors were coupled with a knock-out threat and epithet. Thus, consistent with the Tenth Circuit, Officers Williams and Marsh were entitled to use the force apparently necessary, even if not actually necessary, to subdue the threat. *See Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1249 (10th Cir. 2013) ("An officer who has a reasonable but mistaken belief about a suspect's dangerousness may nevertheless be justified in using more force than is necessary.") (citing *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1314 (10th Cir. 2009)); *accord Youbyoung Park v. Gaitan*, 680 Fed. App'x 724, 739 (10th Cir. 2017) (affirming district court's finding of reasonable force when officers reasonably, although perhaps mistakenly, interpreted a suspect's resistance as fighting back, justifying a knee strike and takedown).

*2. Plaintiff's Efforts to Resist or Evade Arrest*

The objective reasonableness of the officers' force was further reinforced by Plaintiff's efforts to resist or evade arrest.[45] First, he disobeyed a lawful order "not [to stand] just yet"[46] while police were still investigating the situation. In Utah, there is no right to physically resist a police order as long as the officers are within the scope of their authority. *See State v. Trane*, 57 P.3d 1052, 1061 (Utah 2002)). Plaintiff concedes through his use-of-force expert that, given the circumstances, "the officers had reasonable suspicion to conduct an investigation."[47] Having reasonable suspicion, the officers were thus within their scope of authority when they ordered Plaintiff to stay seated. Yet despite the lawful order, Plaintiff got up and again attempted to leave the station. A reasonable officer could construe Plaintiff's disobedience as resistance. *See Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (emphasizing a suspect's refusal to cooperate is an important factor in finding the officer's use of force reasonable). *But see Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009) (holding the suspect's "generally cooperative" behavior suggested he was not resisting arrest, making officers' use of force unreasonable).

Second, by Plaintiff's account, he "pulled," "twisted," and "turned" his arm away from Officer Williams, who had grabbed Plaintiff's arm as he walked toward the exit.[48] Although Plaintiff says this was to avoid a painful hold, the officers reasonably perceived it as continued resistance under the circumstances, especially when Plaintiff appeared paranoid and delirious as well as at times aggressive and noncompliant. *See Bryner v. Salt Lake Cty.*, No. 2:06 CV 377,

---

[45] The objective reasonableness standard is used for any "claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of an individual." *Graham,* 490 U.S. at 388. Thus, regardless of whether Plaintiff was merely stopped or formally arrested, the inquiry is the same.
[46] Torbett Dep. 86:7–22.
[47] Hergert Dep. 20:7–25.
[48] Torbett Dep. 88:12–14, 89:6–14.

2009 WL 2058717, at *5 (D. Utah July 13, 2009) (finding a reasonable officer could have believed suspect shifting to a less painful position during a hold was actively resisting, especially when the suspect was apparently intoxicated, dangerous, and repeatedly noncompliant with officers' orders).[49]

Plaintiff argues he was not resisting or evading arrest because he was never told that he was under arrest. This argument misunderstands Fourth Amendment jurisprudence. The Fourth Amendment "does not require officers to tell a suspect the grounds for his arrest or even to expressly state that he is under arrest; rather, it requires that officers have probable cause before making an arrest." *Rudd v. Graves*, 22 Fed. App'x 954, 956 (10th Cir. 2001) (collecting cases). Once Plaintiff began pulling away from Officer Williams's arm hold, the officers believed they had probable cause to arrest him for disorderly conduct (for displaying his weapon at a police station, swearing at an officer and threatening another); resisting arrest, also known as interfering with a peace officer (for disobeying a lawful command to stay seated); and carrying a concealed firearm (for bringing a gun and loaded magazine into the police station in a laptop bag without a concealed carry permit). Even without actual probable cause, the officers are nevertheless entitled to qualified immunity if they "had an objectively reasonable basis for believing that the facts and circumstances surrounding the arrest were sufficient to establish probable cause." *Hedgpeth v. Rahim*, 893 F.3d 802, 807 (D.C. Cir. 2018) (citing *Wardlaw v. Pickett*, 1 F.3d 1297, 1304 (D.C. Cir. 1993)); *see Malley v. Briggs*, 475 U.S. 335, 339 (1986). The court finds that,

---

[49] Plaintiff relies on *Casey v. City of Federal Heights*, 509 F.3d 1278 (10th Cir. 2007), to support his proposition that shifting to avoid pain is not resisting. However, *Casey* is distinguishable. The plaintiff in *Casey*, who also shifted to avoid a "painful arm-lock," was fully compliant with officer orders and not fleeing the scene; rather, he was returning to it, making himself "easier to capture, not harder." *Id.* at 1280, 1282. In contrast, Plaintiff was not compliant with the order to stay seated and was attempting to walk away from the officers and the station, making his capture harder.

given the information available to the officers at the time, the officers reasonably believed they had probable cause to arrest Plaintiff for at least one violation, if not all three, and reasonably applied force to effectuate the arrest. *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

*3. Severity of the Plaintiff's Crimes*

Since all three of Plaintiff's alleged crimes were misdemeanors or less,[50] this factor initially seems to part from the other two and favor Plaintiff. However, *where* these crimes occurred is probative, drawing this factor back to Defendants' favor. The crimes occurred in a police station. Yet in this public safe haven, Plaintiff was threatening and swearing at officers, resisting their commands and restraints, and had a gun with him and a loaded magazine. Other courts have concluded strikes and takedown maneuvers were reasonable to subdue strange and aggressive conduct in police stations.[51] The court here likewise finds the arm holds and takedown maneuver were reasonable under the circumstances.

Plaintiff's injury was serious and regrettable. But the court is mindful that the Fourth Amendment "does not require [police] to use the least intrusive means in the course of a

---

[50] In Utah, disorderly conduct is a Class C misdemeanor or an infraction, based on the circumstances. Utah Code Ann. § 76-9-102. Resisting arrest—otherwise known as interference with a police officer—is a Class B misdemeanor. Utah Code Ann. §76-8-305. Carrying a concealed firearm is a Class B misdemeanor for an unloaded weapon, Class A if loaded. Utah Code Ann. §76-10-504.

[51] *See Bennett v. Britton*, 609 Fed. App'x. 11 (2d Cir. 2015) (holding an officer's knee strike, which caused a fractured femur, was reasonable when the plaintiff menacingly swung his belt at the officer in a police station); *Schliewe v. Toro*, 138 F. App'x 715 (6th Cir. 2005) (affirming summary judgment grant for defendants, reasoning that the officers use of force—a punch in the face, two kicks in the back, and a wrestle to the ground—was reasonable given arrestee behaved erratically, appeared intoxicated, splattered blood on an officer, called another a "bitch," and attempted to flee detention at the police station); *Koeiman v. City of New York*, 829 N.Y.S.2d 24 (2007) (reversing jury finding for the plaintiff as to excessive force where an intoxicated individual entered a police station, assaulted an officer without provocation or justification, and resisted officer's efforts to restrain him, resulting in a takedown maneuver that caused a fractured femur). *But see Eberle v. City of Newton*, 289 F. Supp. 2d 1269, 1279 (D. Kan. 2003) (denying qualified immunity due to excessive force used on a suspect interrogated at a police station who was not fleeing nor dangerous yet she was thrown to the ground and kicked while down).

detention, only reasonable ones." *United States v. Melendez–Garcia,* 28 F.3d 1046, 1052 (10th Cir. 1994)). And "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham,* 490 U.S. at 396 (citation and quotation marks omitted). For reasons stated above, the officers use of force, while unfortunate, did not violate a Fourth Amendment right.[52] Officers Williams and Marsh are entitled to qualified immunity.

**B. Clearly Established Right**

Having so decided, it is unnecessary to address Defendants' second assertion.

## ORDER

For the reasons stated above, it is hereby **ORDERED** that Defendants Motion for Summary Judgment (doc. 42) is **GRANTED** as to Officers Williams and Marsh. As a result, Plaintiff's Motion in Limine (doc. 44) is moot. All claims against Defendants are **DISMISSED** and this action is **DISMISSED**.

Dated this 11th day of October, 2018.

BY THE COURT

HONORABLE BRUCE S. JENKINS
United States District Court Judge

---

[52] Plaintiff also alleges violations under the Second, Fifth, and Fourteenth Amendments. Pl.'s Am. Compl. 5–6, ECF No. 21. However, these violations go largely unaddressed and entirely unsupported in Plaintiff's opposition brief. Pl.'s Opp'n Br. 23–24, ECF No. 52. Because the court will not undertake counsel's duty of research and argument, these alleged violations will not be addressed in this opinion.